UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| MARY "LUNA" PEREZ, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 5:21-cv-01314 |
| | : |
| RHP STAFFING COMPANY, | : |
| RHP PROPERTIES, JOSEPH CARBONE, | : |
| VICKI GRAY-KAZMIERCZAK, LAURA | : |
| CALVACANTE, KIMBERLY LOMBARD, | : |
| SARAH VAN ASSCHE, MICHELLE SABIN, | : |
| MARGIE DISKIN, | : |
| | : |
| Defendants. | : |

_____

**O P I N I O N**
**Defendants' Partial Motion to Dismiss Amended Complaint, ECF No. 8 – Granted in part and Denied in part**

**Joseph F. Leeson, Jr.**                                                                 October 6, 2021
**United States District Judge**

I.   INTRODUCTION

Mary "Luna" Perez is a Hispanic woman who worked for RHP Staffing company d/b/a RHP Properties ("RHP") from August 20, 2018, until she resigned on June 25, 2020. Perez now sues RHP and seven individual employees of RHP (collectively, the "Defendants") for alleged discrimination, retaliation, hostile work environment, and constructive discharge. Perez brings her claims under Title VII, the Pennsylvania Human Relations Act ("PHRA"), section 1981 of the Civil Rights Act ("Section 1981"), and the Americans with Disabilities Act ("ADA"). Presently before the Court is the Defendants' partial motion to dismiss certain of Perez's claims

Case 5:21-cv-01314-JFL   Document 13   Filed 10/06/21   Page 2 of 18

for failure to state a claim upon which relief may be granted. For the reasons below, the Defendants' motion is granted in part and denied in part.

## II.     BACKGROUND

### A.     Alleged Facts[1]

Perez, a Hispanic American female, was hired by RHP as a Community Management Specialist on or about August 20, 2018. While working for RHP in Florida, she met George Ortega, another RHP employee. Shortly after they met, Ortega sent several text messages to Perez containing sexual innuendo and referring to her as a "princess." Am. Compl. ¶ 47, ECF No. 7. Despite Perez rejecting Ortega's multiple advances, he continued to approach her and visit her office without invitation. On one occasion, he touched his chest and nipples in front of Perez while stating that it was cold. Eventually, Perez reported to her supervisor, Vicki Gray-Kazmierczak, that Ortega was sexually harassing her.

Gray-Kazmierczak told her that she had recognized Ortega's interest in Perez and shared that Ortega had "pounced on her" on her first day, too. Gray-Kazmierczak assured Perez that she would discipline Ortega for his inappropriate behavior. However, Gray-Kazmierczak never followed through with the promised discipline so Perez reported the harassment to RHP's human resource department ("HR") on November 28, 2018.

Shortly after Perez made her report, Gray-Kazmierczak called her and expressed frustration that she had involved HR in the matter. On November 30, 2018, two days after Perez

---

[1] The facts are taken from the Amended Complaint and accepted as true, with all reasonable inferences drawn in Perez's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

made her complaint to HR, she was transferred from Florida to Blossvale, New York. Around the time of her transfer, Joseph Carbone, RHP's Regional Vice President, told her "I'm sorry you went through that. No one should ever have to experience that," referring to Ortega's harassment. Ortega left RHP on his own a few months later without ever being disciplined for his behavior.

Perez viewed her new assignment in Blossvale as a downgrade from her prior one because of the inclement weather. She was also subjected to new "unfair improvement standards set for her by her supervisors" in her new location. Am. Compl. ¶ 65 She asked Carbone for assistance "with the goal of changing the dynamic of the property" but did not receive any help. *Id*. ¶ 67. Perez worked at the Blossvale location until April 8, 2019, before she was reassigned to Dover, Delaware.

In Dover, Perez initially befriended Laura Calvacante, the Regional Manager, but soon thereafter Calvacante "began to treat [Perez] poorly, often requiring her to make changes for residents which were unwelcome and in so doing undermined [Perez's] authority." *Id*. ¶ 70. Feeling overwhelmed by her work volume, Perez asked Calvacante and Carbone for assistance. Instead of receiving help, Perez received email responses from Calvacante and Carbone that were rudely "curt and blunt." *Id*. ¶ 72.

Perez was reassigned a third time on August 5, 2019, to Oakdale, Pennsylvania. The Oakdale property was a difficult assignment for her because she was forced to deal with troublesome residents; and she was forced to call for police assistance on at least two occasions. While working in Oakdale, Calvacante recommended to Perez that she apply for an open Regional Manager position. Perez applied and met with Carbone regarding the position on August 14, 2019. At the meeting, Carbone told her that he would inform her if she got the

position by August 16, 2019. Perez did not hear back from Carbone within the next several days so she contacted Senior HR Generalist, Michelle Sabin. Sabin informed her that no decision had been made yet. On August 26, 2019, Perez expressed concerns to Sabin about the hiring process because she had noticed that another position for Regional Manager had recently been filled without being advertised. Two other Regional Manager positions had also been filled recently, both by Caucasian females, neither of whom went "through the same interview process as [Perez] was required to go through." *Id*. ¶ 84.

On September 6, 2019, Sabin informed Perez that the position she had applied for had been filled (by a Caucasian female). Despite her requests to Sabin, Perez was never told why she was not hired for the position. After Perez failed to receive the promotion, RHP offered her three-months of severance pay on three separate occasions in exchange for her resignation. She rejected the offers and was reassigned a fourth time on October 21, 2019, to Scarborough, Maine.

Perez's arrival to her new area was delayed due to inclement weather. Stating that Perez had "unilaterally decided to adjust her travel schedule," Margie Diskin, Director of HR, issued a written reprimand to Perez on March 4, 2020. *Id*. ¶¶ 98–100. Perez was under the supervision of Kimberly Lombard, a Regional Manager, during her time in Scarborough.

Perez took medical leave from December 7, 2019, to March 1, 2020. Upon returning to work, she was reassigned again to East Hampton, New York. While working in East Hampton, Perez informed RHP that she had been diagnosed with obsessive compulsive disorder, post-traumatic stress disorder, depression, and anxiety. On March 7, 2020, Perez faxed RHP a letter from her treating physician, which recommended, among other things, that Perez be given a work schedule from 10:00 a.m. to 6:00 p.m., and that she not be required to travel more than four

hours at a time. HR Operations Manager, Sarah Van Assche, responded to Perez on March 19, 2020, stating that RHP declined to accommodate the request concerning travel and warned that "failure to complete assigned tasks will negatively impact [Perez's] employment." *See id*. ¶ 114. Subsequently, on or about April 9, 2020, Lombard told Perez that she was aware that Perez was "working with a handicap." *Id*. ¶ 115.

Perez took medical leave again starting on April 11, 2020. Instead of returning to work, she resigned via email to Van Assche on June 25, 2020, stating that she would not be returning to work "due to the hostile work environment that specific employees have created for me." *Id*. ¶ 123.

### B.  Procedural Background

Perez filed a charge of discrimination with the Equal Employment Commission ("EEOC") on May 20, 2020. Charge, Ex A, ECF No. 12. In the Charge, Perez alleged that the Defendants discriminated against her based on her race, national origin, and disability and that they retaliated against her for reporting Ortega's sexual harassment. The EEOC issued her a Right to Sue Letter on December 18, 2020.

Perez filed a Complaint with the Court on March 18, 2021. ECF No. 1. Then, on June 30, 2021, Perez filed an Amended Complaint with the Court, naming RHP and seven individual employees as defendants. Am. Compl. In the Amended Complaint, she asserts multiple claims under Title VII, the ADA, Section 1981, and the PHRA. Perez's overarching allegation is that the Defendants created a hostile work environment through repeated retaliatory actions because she reported Ortega's sexual harassment and, in part, by discriminating against her based on her race and national origin. Specifically, Perez's Amended Complaint alleges the following claims:

Count I:  Discrimination Under State Law  (against corporate Defendants only);

Count II:  Discrimination Under State Law Failure to Promote (against corporate Defendants only);

Count III:  Retaliation Under State Law Adverse Employment Actions (against all Defendants);

Count IV:  Discrimination Under State Law—Aiding and Abetting (against individually named Defendants only);

Count V:  Retaliation, Constructive Discharge and Failure to Promote Under Federal Law U.S.C. Section 1981 (against all Defendants);

Count VI:  Discrimination Under Title VII Hostile Work environment and Disparate Treatment Constructive Discharge and Failure to Promote (against corporate Defendants only);

Count VII:  Retaliation Under Title VII  (against corporate Defendants only);

Count VIII:  Discrimination Under the ADA Failure to Accommodate (against corporate Defendants only); and

Count IX:  Discrimination Under the ADA Retaliation (against corporate Defendants only).

The Defendants filed with the Court a partial motion to dismiss the Amended Complaint on July 21, 2021. Mot. ECF No. 8, 12.[2] In the Motion, the Defendants assert that multiple of Perez's claims should be dismissed for various reasons.

---

[2] The Defendants filed their original partial motion to dismiss on July 21, 2021 but forgot to attach Exhibit A to that motion. ECF. No. 8. The Defendants corrected their mistake by filing a second, identical partial motion to dismiss, this time attaching Exhibit A, on September 23, 2021. ECF No. 12. This Opinion refers to both motions throughout as a single motion.

Perez filed with the Court a response in opposition to the Motion, Resp. ECF No. 10[3], and the Defendants then filed with the Court a reply in support of the Motion. Reply, ECF No. 11.

### III.   LEGAL STANDARDS — Review of Applicable Law

    A.   Rule 12(b)6)

Under Rule 12(b)(6), a defendant may motion a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages,*

---

[3]   In her Response, Perez "agrees to withdraw her claims for individual liability under USC Section 1981 and the PHRA with regard to race discrimination against Defendants Gray-Kazmierczak, Calvacante, Lombard and Van Assche" under Count V. Resp. at 15.

*Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

## IV.   ANALYSIS

The PHRA, Title VII, and Section 1981 share a common goal—to eradicate discrimination in the workplace. *See e.g., Woodson v. Scott Paper Co.*, 109 F. 3d 913, 919 (3d. Cir. 1997) (explaining that both Title VII and the PHRA "forbid" employers from "discriminating against an employee"); *Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749, 753 (E.D. Pa. 2014) ("In its current form, § 1981's prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship, including discriminatory contract terminations." (internal quotations and citation omitted)). Thus, "claims of race-based employment discrimination under Section 1981, Title VII, and the PHRA are analyzed coextensively." *Lara v. Samuel Adams Pennsylvania Brewing Co., LLC*, No. 5:20-CV-0498, 2020 WL 5211206, at *7 (E.D. Pa. Sept. 1, 2020) (internal quotations and citation omitted). The Court therefore analyzes Perez's claims for discrimination together to the extent that they are brought under all three statutes.[4]

### A.   Hostile work environment: Perez has failed to sufficiently plead her claims.

To successfully bring a hostile work environment claim, a plaintiff must adequately plead that " (1) [the plaintiff] suffered intentional discrimination because of [the plaintiff's] national origin [or race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected

---

[4]   The exception is Perez's claim of retaliation under the ADA. *See* Am. Compl. ¶¶ 202–09.

[the plaintiff]; (4) it would have detrimentally affected a reasonable person of the same protected class in [the plaintiff's] position; and (5) there is a basis for vicarious liability." See *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001).

The Court finds that Perez has failed to allege facts capable of making out a claim of race-based hostile work environment for two primary reasons: (1) Perez fails to allege that a majority of the discriminatory acts were because of her race; and (2) the alleged discriminatory acts "constitute discreet acts rather than a *series* of events capable of supporting a hostile work environment claim." *Lara,* No. 5:20-CV-0498, 2020 WL 5211206, at *11 (emphasis in original).

To prove her claim of hostile work environment, Perez must first allege that she suffered intentional discrimination based on her sex, race, or national origin. However, Perez alleges that it was her report of Ortega's harassment that caused the Defendants' discriminatory acts and "started the wheels in motion for the remainder of [her] causes of action." Resp. at 8. In other words, Perez alleges that the Defendants' discriminated against her in retaliation for reporting harassment, not because of her race or national origin. Even if the discriminatory acts possessed a racial component sufficient to satisfy the first element, they do not constitute a continuous unlawful employment practice, rather they are a series of separate events.

"Hostile work environment claims are different in kind from discrete acts." *Nat'l R.R. Passenger Corp., v. Morgan*, 536 U.S. 101, 104 (2002). Whereas a hostile work environment is a series of acts comprising "one unlawful employment practice," *id*., discrete discriminatory acts, such as "termination, failure to promote, denial of transfer, or refusal to hire," stand on their own and do not constitute a *practice* of discrimination. *Id*. at 114. Most separate, or discrete acts "are easy to identify." *Id.*

In sum, the discriminatory acts that Perez alleges are as follows: (i) defendant Gray-Kazmierczak failed to pursue Perez's allegations of sexual harassment; Am. Compl. ¶ 54 (ii) Gray-Kazmierczak expressed frustration towards Perez for involving HR; *Id*. ¶ 59; (iii) Perez was transferred to Blossvale; *Id*. ¶ 62 (iv) defendant Calvacante treated Perez poorly; *Id*. ¶ 70; (v) defendants Calvacante and Carbone sent Perez rude emails; *Id*. ¶ 72; (vi) Perez was transferred to Oakdale; *Id*. ¶ 74; (vii) Defendants failed to promote Perez; *Id*. ¶ 87 (viii) Perez was offered severance pay on three separate occasions in exchange for her resignation; *Id*. ¶¶ 91, 95 (ix) Perez was transferred to Scarborough; *Id*. ¶ 96 (x) Perez was transferred to East Hampton; *Id*. ¶ 104 (xi) defendant Diskin unfairly disciplined Perez; *Id*. ¶ 102 (xii) defendant Van Assche denied Perez's request for an accommodation; *Id*. 113 (xiv) defendant Van Assche threatened Perez with termination; *Id*. ¶ 114, and (xv) Perez was forced to resign due to the hostile environment. *Id*. ¶ 123.[5] The facts of this case are similar to *Washington-Morris v. Bucks Cty. Transp., Inc.*, No. CV 17-3631, 2018 WL 2021081 (E.D. Pa. May 1, 2018).

In *Washington-Morris*, Ms. Washington alleged that her employer, Bucks, "had a pattern or practice of discriminating against her" that constituted a hostile work environment. *Id*. at 5. To support her argument, Ms. Washington pointed to a number of adverse employment actions, such as a reduction in hours, being required to go to work during bad weather when white co-workers did not, being required to reschedule a needed surgery, no longer being allowed to use the company car, and being offered shifts only during times she was unavailable. *Id*. at 6. The *Washington-Morris* court determined that the acts did not constitute a pattern or practice because Ms. Morris did "not allege any link between these various events to make them a pattern or

---

[5] For convenience's sake, the Court refers to the alleged acts by the designated Roman numerals throughout this Opinion.

practice of behavior" other than the fact "that some of the same bad actors were involved in a few of the discriminatory events." *Id*. at 7. The court explained that "[m]ore is required to demonstrate a pattern or practice of discriminatory behavior by a defendant." *Id*.

Similar to Ms. Morris, Perez also fails to establish a sufficient link between the alleged discriminatory acts to establish one continuous unlawful employment practice. The only link that Perez alleges connects the acts in this case is that they were all in retaliation for her reporting of Ortega's sexual harassment. Resp. 8–9. However, "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice." *Nat'l R.R. Passenger Corp.*, 536 U.S. 101, 111 (2002). Unlike Ms. Washington, Perez does not even allege that the acts of discrimination in her case involved the same people. Thus, Perez's assertion that the alleged acts of discrimination all relate back to a single event is not enough to convert the discrete acts of discrimination into one continual unlawful employment practice. This finding comports with the Third Circuit's rationale that the "rule that individually actionable allegations cannot be aggregated" when the individual claims, "even when relatively minor," are actionable on their own. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). Each of Perez's alleged acts of retaliation could have been brought on their own if done within the applicable statute of limitations. [6]

Therefore, while Perez's allegations "are sufficient to state claims upon discrete acts of discrimination and retaliation, they cannot, without more, provide the basis for a claim of hostile work environment." *Lara*, No. 5:20-CV-0498, 2020 WL 5211206, at *12.

---

[6] It is worth noting that the denial of Perez's request for an accommodation is also a discrete act. *See Washington-Morris*, WL 2021081, at *6 (E.D. Pa. May 1, 2018) (The Third Circuit has "found that a reasonable accommodation request is a one-time occurrence rather than a continuing practice, and therefore, does not fit under the continuing violations theory." (internal quotations and citation omitted)).

For the above reasons, Perez has failed to state a claim of hostile work environment. This claim is dismissed without prejudice.[7]

### B. Constructive discharge: Perez has failed to sufficiently plead her claim.

To bring a successful claim of constructive discharge, a plaintiff must show that the employer made working conditions "so unpleasant or intolerable that a reasonable person in the employee's shoes would resign." *Rosh v. Gold Standard Café at Penn, Inc.*, No. CV 16-1676, 2016 WL 7375014, at *5 (E.D. Pa. Dec. 19, 2016) (internal quotation marks and citation omitted). The plaintiff does not need to show that the employer intended for them to resign, only that it "knowingly permitted the unpleasant or intolerable discrimination." *Id*. When a plaintiff's claim of constructive discharge is based on an alleged hostile work environment, the "hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004).

Since the Court has already determined that the alleged acts of discrimination are discrete acts that cannot support a hostile work environment claim, it follows that Perez's claim of constructive discharge based on the alleged hostile work environment must also fail.[8] This claim is dismissed without prejudice.[9]

---

[7] *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Although Perez previously filed an amended complaint, it was filed before the Court issued an opinion identifying the deficiencies in the pleadings and there is nothing to suggest that Defendants will be prejudiced by allowing Perez an opportunity to amend. *See Cornell & Co. v. OSHRC*, 573 F.2d 820, 823 (3d Cir. 1978) ("It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971))).

[8] Since the Court dismisses Perez's claim for constructive discharge for failing to establish a hostile work environment, the parties' arguments regarding whether Perez adequately exhausted her administrative remedies for this claim are moot.

[9] *See Alston*, 363 F.3d at 235.

C.   **Perez's claims for acts (i)–(ix) are time barred under the PHRA and/or Title VII.**

To bring suit under the PHRA, a plaintiff must file a complaint with the Pennsylvania Human Relations Commission "within 180 days of the alleged act of discrimination." *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 535 (W.D. Pa. 2010). If they do not file within the 180 days, they are "precluded from judicial remedies under the PHRA." *Id*. Similarly, to bring suit under Title VII, a plaintiff must file a charge "with the EEOC within 300 days of the" alleged act of discrimination." *Mahosco Corp. v. Silver*, 477 U.S. 807, 810 (1980). Failure to meet these deadlines is fatal to any claim alleging discrimination that took place outside of the 180- or 300-day limit unless the plaintiff can show that an exception applies. *See Yeager*, 698 F. Supp. 2d 523, 540 (explaining that there "are three typical situations where courts have permitted equitable tolling" regarding claims that fall outside of the 180- or 300-day statute of limitations).

One such exception is the continuing violations doctrine. *See Yeager*, 698 F. Supp. 2d 523, 540 (applying the continuing violations exception to a PHRA claim). Under the continuing violations doctrine, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Washington-Morris*, No. CV 17-3631, 2018 WL 2021081, at *6 (internal quotations and citation omitted). The continuing violation exception is construed narrowly. *See Yeager*, 698 F. Supp. 2d 523, 540 ("Courts frequently construed the doctrine as a "narrow exception" to the timely filing requirement."). In order to successfully aggregate discriminatory actions, a plaintiff must "demonstrate that the acts are part of the same unlawful employment practice rather than a series of separate, discriminatory events." *Id*. In other words, discrete acts that occur outside of the time

limit cannot be linked to more recent acts "even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp.*, 536 U.S. 101, 113. "Each discrete act starts a new clock for filing charges alleging that act." *Id*.

The Defendants' assert that any alleged acts that occurred prior to November 22, 2019, are time barred under the PHRA because Perez did not file the Charge until May 20, 2020. Mot. at 6. Similarly, the Defendant's assert that any alleged acts that occurred prior to July 25, 2019, are time barred under Title VII. *Id*. Perez argues that alleged acts that occurred outside of the statutes' deadlines are saved under the continuing violations doctrine because the acts constitute one unlawful employment practice.

Since the Court has already found that the acts are discrete acts that do not constitute one continuous unlawful employment practice, it agrees with the Defendants. The alleged acts (i)–(v) took place more than 300 days prior to Perez filing the Charge. They are time barred under Title VII. In addition to alleged acts (i)–(v), acts (vi)–(ix) took place more than 180 days prior to Perez filing the Charge. Acts (i)–(ix) are all time barred under the PHRA.

Defendants Gray-Kazmierczak and Calvacante are tied only to Perez's dismissed claim of hostile work environment and to acts that are time barred under both Title VII and the PHRA.[10] Perez's claims against Gray-Kazmierczak and Calvacante fail under Rule 12(b)6 for failure to state a claim upon which relief can be granted and they are dismissed. While allegations (i)–(v) cannot be used for separate claims under either Title VII or the PHRA, and allegations (vi)–(ix) cannot be used for separate claims under Title VII, Perez is not barred "from

---

10    Again, Perez agreed to withdraw her Section 1981 discrimination claims against Gray-Kazmierczak, Calvacante, Lombard, and Van Assche. Resp. at 15.

using [allegations (i)–(ix)] as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. Morgan*, 536 U.S. 101, 113 (2002).

To the extent that any of Perez's claims are based on acts (i)–(v), they are dismissed with prejudice.[11] To the extent that any of Perez's claims under Title VII are based on acts (vi)–(ix), they are dismissed with prejudice.

### D. Discrimination based on race: Perez has failed to sufficiently plead her claims, with the exception of race-based discrimination for act vii.

To successfully assert a claim for discrimination based on race, a plaintiff must plead facts that "(1) [the plaintiff] belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017) (quotations and citation omitted). The Defendants dispute only the second element—an intent to discriminate based on Perez's race.

The Defendants argue that Perez's claims of discrimination based on race fail because she fails to allege facts that she was discriminated against because of her race. This Court agrees with the Defendants for the most part; regarding acts i–vi, and acts viii–xv, Perez fails to allege any facts that these discriminatory acts were because of her race. The Amended Complaint asserts throughout that Defendants discriminated against Perez "because of her race [and] national origin," *see generally Am. Compl*. But these are conclusory statements, and simply repeating it multiple times does not change them into factual allegations. Perez is not required to

---

[11] The Court dismisses these claims with prejudice because no amount of amendments will enable Perez to file a charge of discrimination before the deadline since it has already passed for these claims. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d. 289, 292 (3d Cir. 1988) (citing *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) (explaining that amendment is futile if "the amendment will not cure the deficiency in the original complaint")).

assert "detailed factual allegations" of race-based discrimination to survive Defendants' motion to dismiss. *See Twombly*, 545 (2007). However, Perez's Amended Complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements." *Id*. The Amended Complaint does allege that each of Perez's supervisors were Caucasian. But as the Defendants point out, the mere fact that Perez's supervisors were Caucasian, without more, is not enough to establish that an adverse action was based on her race. *See Oliver v. clinical Practices of University of Pennsylvania*, 921 F. Supp. 2d 434, 455 ("Because Plaintiff has not presented any evidence from which a juror could infer that [Defendants] acted with racial animus, and because the mere fact that those individuals are white is insufficient to demonstrate such intent, her Title VII hostile work environment claim fails."). Thus, Perez has failed to allege sufficient facts to support her claims for race-based discrimination, with one exception—act vii.

The Court finds that Perez has sufficiently plead her claim that she was passed over on a promotion because of her race—act vii. Regarding this claim, Perez asserts that three Caucasian applicants, who were eventually hired as Regional Managers, did not have to go through as rigorous of an interview process as she did. This is a sufficient factual allegation to survive a motion to dismiss because it "has facial plausibility" allowing the Court "to draw the reasonable inference" that the Defendants could be liable for the misconduct alleged. *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016) (quotations and citation omitted).

For these reasons, Perez's claim of race-based discrimination regarding failure to promote survives dismissal. All other claims of race-based discrimination are dismissed without prejudice.

### E. Retaliation under the ADA: Perez has failed to sufficiently plead her claims.

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

The Defendants argue that Perez has failed to establish a prima facie case of retaliation under the ADA because she did not suffer any adverse employment action after making her request for an accommodation. Mot. at 16–18. Perez concedes that Van Assche's "threat" of termination does not constitute an adverse employment action but asserts that her constructive discharge does, which took place after her request was made. Resp., 15.

Perez is correct that a constructive discharge may constitute an adverse employment action. *See generally Pennsylvania State Police*, 542 U.S. 129. However, even assuming that there is a constructive discharge in this case, there is no "causal connection between [Perez's request for an accommodation] and the employer's adverse action." *See Krouse,* 126 F.3d 494, 500.

Taking Perez's allegations to be true, her constructive discharge was the culmination of discriminatory acts based on her report of Ortega's harassment, not based on her request for an accommodation. Other than the dismissed allegation of constructive discharge, each of the alleged acts of discrimination occurred *before* she requested an accommodation under the ADA; none of the alleged acts of discrimination could have been in retaliation for her request because the Defendants did not even learn of Perez's disability until March 4, 2020. Am. Compl. ¶ 105.

Perez's claim therefore fails under the third element requiring a causal connection and this claim is dismissed with prejudice.[12]

## V. CONCLUSION

For the reasons reviewed herein, the Defendants' partial motion to dismiss the Amended Complaint is granted in part and denied in part. The motion is granted as to Perez's claims of hostile work environment and constructive discharge. The motion is also granted as to Perez's claims brought under Title VII or the PHRA that are based on acts (i)–(v) and Perez's claims brought under Title VII that are based on acts (vi)–(ix). The motion is also granted as to Perez's claims of race-based discrimination, with the exception of act vii. The motion is also granted as to Perez's claim of retaliation under the ADA, which is dismissed with prejudice. Lastly, since there are no pending claims against defendants Gray-Kazmierczak and Calvacante, they are terminated from the case as defendants.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[12] The Court dismisses this claim with prejudice because any further amendment of Perez's complaint would be futile. She cannot cure the deficiency in this claim because there cannot be another adverse employment action taken in retaliation for requesting an accommodation seeing as how she no longer works for RHP. *See Jablonski*, 863 F.2d. 289, 292 (3d Cir. 1988) (citing *Massarsky*, 706 F.2d at 125).